**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC., <br><br>                   Petitioner, <br><br>   v. <br><br> ZACH GOLDSTEIN, <br><br>                   Respondent. | Misc. Action No. <br><br> Underlying Action Pending in the United States District Court for the Southern District of New York: INTERNATIONAL CODE COUNCIL, INC. v. UPCODES, INC., GARRETT REYNOLDS, and SCOTT REYNOLDS, Civ. Action No. 1:17-cv-6261 (DH)(VF) |

**MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL CODE COUNCIL, INC'S MOTION TO ENFORCE A RULE 45 SUBPOENA**

International Code Council, Inc. ("ICC") respectfully submits this memorandum of law in support of its Motion to Enforce a Rule 45 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (hereinafter, the "Subpoena") served on Zach Goldstein, an individual residing at 50 Murray Street, New York, NY 10007.[1] The Subpoena was served in connection with a consolidated action for copyright infringement and false advertising pending in this Court captioned *International Code Council, Inc. v. UpCodes, Inc. et al.*, No. 1:17-cv-6261-DEH-VF (the "Action").[2]

## I.    Factual Background

On August 17, 2017, Plaintiff ICC, a California not-for-profit corporation, filed a complaint for copyright infringement against Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds alleging that Defendants' reproduction and display of building codes and standards on Defendants' website infringed on ICC's copyrights to model codes and standards which it develops and maintains, known as the International Codes or I-Codes. Wise Decl. ¶ 4, Ex. 3. On October 19, 2017, Defendants answered ICC's complaint for copyright infringement, raising nine affirmative defenses and bringing a counterclaim for declaratory judgment of no copyright infringement. Wise Decl. ¶ 6, Ex. 5.

On June 5, 2020, ICC filed a separate complaint for false advertising and unfair competition against Defendants alleging that Defendants' commercial advertising and promotion of the building codes appearing on their website as "always up to date" and "complete" and that

---

[1]  The Subpoena is attached as **Exhibit 1** to the Declaration of Jane W. Wise ("Wise Decl."), filed contemporaneously herewith.  The affidavit of service of the Subpoena is attached as **Exhibit 2**.
[2]  A copy of the second copyright infringement complaint from the Action is attached to the Wise Decl. as **Exhibit 3**, a copy of the false advertising complaint from the Action is attached as **Exhibit 4**, a copy of Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds' (collectively, "Defendants") answer to the second copyright infringement complaint is attached as **Exhibit 5**, and a copy of Defendants' answer to the false advertising complaint is attached as **Exhibit 6**.

-2-

UpCodes is the "only source" or "only place" where consumers can view local amendments integrated into model code are literally false claims. Wise Decl. ¶ 5, Ex. 4. ICC further alleged that Defendants' commercial advertising and promotion of the building codes appearing on their website as including "integrated amendments" implies a false message that the building codes Defendants post contain all amendments made by a relevant jurisdiction, when, in fact, UpCodes omitted numerous amendments and/or made errors in the text that it passes off as accurate and complete. *Id.* On October 14, 2022, Defendants answered ICC's complaint for false advertising, raising seven affirmative defenses. Wise Decl. ¶ 7, Ex. 6. The cases for copyright infringement and false advertising were consolidated by this Court on January 13, 2023. *ICC.*, No. 1:17-cv-6261-DEH-VF, Dkt. 142 (S.D.N.Y. Jan. 13, 2023).

On May 5, 2023, ICC issued a subpoena to Respondent Zach Goldstein ("Respondent" or "Mr. Goldstein") which was personally served on him on May 6, 2023 by a licensed process server employed by Court Support, Inc. Wise Decl. ¶¶ 2-3, Exs. 1-2. Mr. Goldstein was featured on Defendants' website as an UpCodes customer and "Principal" of ZGA, an entity which does not appear to even exist. *Id.* at ¶ 5, Ex. 4 ¶ 59. Mr. Goldstein is quoted as stating that his "team is working off the most up-to-date codes." *Id.*



**ZACHARY GOLDSTIEN**
Principal
ZGA

" UpCodes removes the burden of managing updates. I'm much more comfortable knowing my team is working off the most up-to-date set of codes. We are based in New York – like a lot of jurisdictions the updates are frequent – these are critical to our workflow. We can reduce any confusion at the outset of a project. We have been pleased being able to eradicate the potential for confusion right from the start of any project. Can't imagine going back to the books! "

On May 22, 2023, Respondent, represented by the same counsel as Defendants, served objections and responses to ICC's Subpoena. Wise Decl. ¶ 8, Ex. 7. In relevant part, Respondent objected to Request Nos. 2-6 and 11-20 as being overly broad, unduly burdensome, and not

proportional to the needs of the case insofar as the requests required him to "perform a search beyond an email query."[3]  *See id.*  Similarly, in response to Request Nos. 3-6, 11-13 and 20, Respondent only agreed to produce "emails that substantively concern UpCodes," rather than all documents which are responsive to those requests.  *See id.*  Additionally, Respondent refused to search for or produce documents responsive to Request No. 10, which sought "[a]ll documents regarding purchases of codes and/or standards from any Third Party."  *See id.*  Further, Respondent objected to Request Nos. 1-6 and 11-20 "as calling for documents more appropriately obtained from Defendants to the extent they are discoverable."  *See id.*

On June 30, 2023, ICC sent Respondent a letter regarding the issues in Respondent's Objections and Responses to ICC's Subpoena.  Wise Decl. ¶ 9, Ex. 8.  On July 31, 2023, Respondent sent ICC a letter standing on his objections regarding the above-referenced issues.  Wise Decl. ¶ 10, Ex. 9.  In his July 31 Letter, Respondent referenced the fact that he "is not and has never been a 'customer' of UpCodes" but is simply "a friend of Scott Reynolds who at one point received a free account," in direct contradiction to the statement on UpCodes' website which indicates Respondent is the principal of an organization which is an UpCodes customer.  *Id.*

The deadline for substantial completion of document production passed on January 19, 2024.  Even though Respondent's and Defendants' counsel served objections to Request Nos. 1-6 and 11-20 on the ground that they "call[ed] for documents more appropriately obtained from Defendants," Defendants did not produce any of those requested documents.  Therefore, ICC

---

[3] Respondent's objections and responses to Requests No. 1 and 7-9 do not object to performing searches beyond an email query; rather, the responses state Respondent "has not located any responsive documents following a reasonable search." (*See* Wise Decl. ¶ 8, Ex. 7).  It is unclear whether Respondent's "reasonable search[es]" with regard to Request Nos. 1 and 7-9 included searching beyond emails.

brings this motion to compel Respondent to search for and produce all responsive documents not limited to emails and to compel Respondent to search for and produce documents responsive to Request No. 10.  Counsel for ICC, Jane Wise & Gabrielle Velkes, and counsel for Respondent, Allyson Bennett, met and conferred from 2:00-3:00 p.m. PT on March 8, 2024.  Counsel for Respondent confirmed that Respondent's positions remained the same as those outlined in his July 23, 2023 Letter.  *See* Wise Decl. ¶ 10, Ex. 9.  Counsel for ICC informed counsel for Respondent that the parties were therefore at an impasse and ICC would be filing the instant motion to compel.

## II.     Argument

### a.  Legal Standard

Federal Rule of Civil Procedure 45 "permits parties to obtain discovery from non-parties" when the discovery sought is both relevant and proportional to the needs of the case.  *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 2020 WL 526404, at *2 (S.D.N.Y. Feb. 3, 2020) (the information requested from a non-party "must be consistent with Rule 26(b)(1), meaning that the information must be relevant to the claims and defenses and proportional to the needs of the case."); *see also Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, 2020 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018) ("Like discovery requests served on parties, subpoenas issued to non-parties pursuant to Fed. R. Civ. P. 45 are subject to the relevance requirement of Rule 26(b)(1).") (internal citations and quotations omitted).

In order for a Rule 45 subpoena to be deemed valid, it must: (i) state the court from which it issued; (ii) state the title of the action and its civil-action number; (iii) command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises; and (iv) set out the text of

Rule 45(d) and (e).  Fed. R. Civ. P. 45(a)(1)(A).  The subpoena to Mr. Goldstein stated that it was issued by the United States District Court for the Southern District of New York; stated the title of the action, *International Code Council, Inc. v. UpCodes, Inc.; Garrett Reynolds; and Scott Reynolds*, and the civil action number, 1:17-cv-06261(VM); commanded Mr. Goldstein to produce documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material, on May 26, 2023 at 5:00 pm; and set out the text of Federal Rule of Civil Procedure Rules 45(c), (d), (e), and (g).  Wise Decl. ¶ 2, Ex. 1.

### b. Respondent Cannot Refuse to Search for and Produce Responsive Non-Email Documents.

Respondent should be compelled to withdraw its objections, search for, and produce all documents responsive to ICC's Requests, without limiting such searches to only email queries.

Federal Rule of Civil Procedure 45 explicitly permits a subpoena to command the production of designated documents, electronically stored information, or tangible things in a person's possession, custody, or control.  Fed. R. Civ. P. 45(a)(1)(A).  There is nothing in Rule 45 which entitles Respondent to limit his searches for responsive documents to email queries. Notably, Respondent has identified no authority in the Federal or Local Rules which permits such a sweeping limitation.

Rather, Respondent claims that because "he is not aware of other documents, whether electronically stored or in hard copy, pertaining to UpCodes," limiting his searches to emails is therefore proper, citing to Federal Rule of Civil Procedure 45(e)(1).  Wise Decl. ¶ 10, Ex. 9. The standard is not whether Respondent is aware of documents—Rule 45(e)(1) requires Respondent to produce all electronically stored information unless such information is "not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 45(e)(1)(D).  It is Respondent's burden to show that such information is not reasonably accessible because of undue burden or cost.

*Id.* Nowhere in his Objections and Responses or his July 31 Letter does Respondent identify any undue burden or cost *at all*. Respondent's references to the fact that he is an individual with purportedly "no connection to this case" are unavailing. Wise Decl. ¶ 10, Ex. 9. This is contrary to facts evident on the face of the False Advertising Complaint. UpCodes quoted Respondent as a Principal of a purported architectural firm with a testimonial about his "team" at "ZGA" which claims to be an UpCodes customer. Regardless, even if Respondent were simply an individual, he has wholly failed to demonstrate how that fact alone leads to the conclusion that the information sought by ICC is not reasonably accessible because of undue burden or cost to him. While Respondent correctly notes that courts must weigh the probative value of the information sought against the burden of production to the nonparty, "[i]nconvenience alone to a non-party is not enough to justify noncompliance with a subpoena." *In re Novartis & Par Antitrust Litig.*, 2020 WL 3317203, at *13 (S.D.N.Y. June 18, 2020) (quoting *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3822883, at *4 (S.D.N.Y. Aug. 30, 2017)).

All of ICC's Requests seek documents and information that are directly relevant to ICC's claims for copyright infringement and false advertising. Although Respondent raised boilerplate relevance objections to some of ICC's Requests, nowhere did Respondent state with specificity how ICC's Requests are irrelevant. *See* Wise Decl. ¶ 8, Ex. 7. For example, Respondent objected to Request No. 2, which sought "[a]ll advertising, marketing, or promotional documents You have received or viewed regarding UpCodes," as irrelevant by claiming generally that "[w]hat advertising, marketing, or promotional documents [Respondent] specifically has received or viewed is not relevant to any issue in this case." *Id.* Advertising, marketing, and promotional materials show the representations that UpCodes has made to consumers (and were reviewed by at least one UpCodes consumer) regarding its products and services which are plainly relevant to

ICC's allegations that UpCodes made false and misleading statements to its consumers in connection with the sale of its products and services. If Mr. Goldstein received or viewed false and misleading statements in UpCodes' advertising, marketing, and promotional materials which led him to cease using ICC's codes and/or standards or codes/standards from ICC's licensees in favor of UpCodes, this information is directly relevant to ICC's claim of irreparable harm and to ICC's damages, as is Mr. Goldstein's understanding of the claims that UpCodes made in any such materials.

Accordingly, Respondent should be compelled to search for and produce all documents which are responsive to ICC's Requests without limiting such searches to only email queries.

### c. Respondent Should Be Compelled to Search for and Produce Documents Related to His Purchase of Codes and Standards from Third Parties.

Respondent should also be compelled to search for and produce documents responsive to ICC's Request No. 10, which seeks "[a]ll documents regarding purchases of codes and/or standards from any Third Party." Wise Decl. ¶ 2, Ex. 1. This information is directly relevant to the harm suffered by ICC. If Respondent (and potentially other similarly situated UpCodes users) previously purchased codes from ICC, its licensees, or other standards development organizations or their licensees and began using UpCodes as an alternative for those licensed products, this is relevant to the harm and damages suffered by ICC as a result of UpCodes' copyright infringement and false advertising. Whether Respondent used UpCodes as a substitute for ICC, its licensees, or other third-party codes and standards is also directly relevant to the fourth fair use factor[4] regarding the effect of the use on the potential market for or value of the copyrighted work. *See Capitol Records, LLC v. ReDigi, Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) ("When a secondary use competes

---

[4] UpCodes raised fair use as its eighth affirmative defense in its answer to the ICC's copyright infringement complaint. Wise Decl. ¶ 6, Ex. 5.

in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them.").

Respondent objected to Request No. 10 as "seeking documents irrelevant to the claims or defenses in the case" and as "overbroad, unduly burdensome, and not proportionate to the needs of the case." Wise Decl. ¶ 8, Ex. 7. In his July 31 Letter, Respondent also claims that he "has never been a paid UpCodes customer and has never purchased anything from UpCodes" and, therefore, "[w]hether he specifically has bought codes from others is . . . not relevant to any issue in this case[.]" Wise Decl. ¶ 10, Ex. 9. Respondent's July 31 Letter also claims that it is "unreasonable" and "unduly burdensome" to require him to search for all documents regarding codes or standard he purchased from third parties. *Id*.

Respondent's burden objections are baseless. The party objecting to the subpoena has the burden of demonstrating that the subpoena is "overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 469-70 (S.D.N.Y. 2023) (quoting *Edgefield Holdings v. Gilbert*, 2018 WL 1138516 (N.D. Tex. Mar. 2, 2018) (subpoena not unduly burdensome where party objecting to subpoena fails to provide specificity or explanation)); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.") (quoting 9 James Wm. Moore et al., *Moore's Federal Practice* ¶ 45.51[4] (3d ed. 2009)). Respondent has presented no evidence of how Request No. 10 is unduly burdensome. He has failed to proffer any evidence or even a basic explanation as to how requiring him to search for

documents regarding purchases of codes and/or standards from third parties would impose an undue burden on him.

Respondent's relevance objection fares no better.  Contrary to Respondent's position, the relevance of documents regarding purchases of codes and/or standards from any third party does not turn on whether or not Respondent has been a "paid UpCodes customer" or "purchased anything from UpCodes."  Wise Decl. ¶ 10, Ex. 9.  Rather, if Respondent was purchasing or using codes and/or standards from ICC or one of ICC's licensees for himself and/or his "team" and ceased doing so in favor of either UpCodes' free or paid offerings, this information is directly relevant to ICC's claim of irreparable harm and to ICC's damages, as well as to UpCodes' affirmative defense of fair use.  Additionally, whether Respondent has been a customer of any third party other than UpCodes or ICC for codes and/or standards, and the timeline of any such relationship, is directly relevant to ICC's allegations that UpCodes has made false and misleading statements about its products and services, specifically, that UpCodes has claimed it is the "only source" or only place where consumers can obtain local amendments integrated into model code. Wise Decl. ¶ 5, Ex. 4.  If Respondent purchased codes and/or standards from third parties because a certain code or amendment was not available on UpCodes, this would directly support ICC's allegations that such statements made by UpCodes are indeed false.

Respondent failed to meet his burden to identify evidence that searching for documents regarding codes and/or standards he purchased from third parties would be unduly burdensome, and those documents are unquestionably relevant to the claims and defenses in the Action. Accordingly, Respondent should be compelled to search for and produce documents responsive to ICC's Request No. 10.

**III.    Conclusion**

For the foregoing reasons, ICC respectfully requests that the Court grant ICC's motion to enforce the Subpoena and (1) compel Respondent to search for and produce all non-privileged non-email documents responsive to ICC's Requests for Production of Documents Nos. 2-6 and 11-20 by no later than fifteen (15) days after entry of the Court's order; and (2) compel Respondent to search for and produce all non-privileged email and non-email documents responsive to Request for Production No. 10 by no later than fifteen (15) days after entry of the Court's order.

Dated: September 6, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee
Jane W. Wise
500 Eighth Street, N.W.
Washington, DC 20004
Phone: (202) 799-4149
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com

Gabrielle C. Velkes
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 335-4812
gabrielle.velkes@us.dlapiper.com